```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET METAL
AND AIR CONDITIONING INDUSTRY, and SHEET
METAL WORKERS' INTERNATIONAL ASSOCIATION
SCHOLARSHIP FUND,
                          Plaintiff(s),              REPORT AND
                                                     RECOMMENDATION
            -against-                                CV 11-1239 (JS) (WDW)

EUGENE NIFENECKER as an individual,
                          Defendant(s).
-----------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

Before the court on referral from District Judge Seybert is the plaintiffs' motion for default judgment and award of damages. For the reasons set forth *infra*, I recommend that default judgment be entered and that the plaintiffs be awarded $11,441.67 in delinquent contribution damages, along with interest in the amount of $1,938.44, liquidated damages in the amount of $2,288.33, legal fees in the amount of $1,275 and costs in the amount of $390, totaling $17,333.44 against Eugene Nifenecker as an individual.

## BACKGROUND

The plaintiff Funds (the Funds) brought this action under ERISA, 29 U.S.C. § 1132, to collect delinquent contributions and related damages allegedly owed by defendant Eugene Nifenecker as an individual. It is, in this court's experience, unusual for an individual to be the sole defendant in such an action, but the plaintiffs allege that Nifenecker exercised control over the activities and operations of Liberty Signs NY, Inc. and determined whether or not Liberty Signs NY made its required contributions to the Funds. The plaintiffs further allege that

Nifenecker is personally bound by a collective bargaining agreement ("CBA") between various multi-employer associations and Local Union No. 137, Sheet Metal Workers' International Union. *See* Shaw Decl., ¶¶8&9 & Ex. A. The name of the party on the CBA is Liberty Sign and it is signed by "Gene Nifenecker II." The plaintiffs have submitted documentation to establish that Gene Nifenecker II is the same person as the defendant Eugene Nifenecker. *See* Second Supp. Decl. of Jeffrey S. Dubin & Ex. DE[9 & 10]. The plaintiffs seek $11,441.67 in delinquent contribution damages, along with interest in the amount of $1,938.44 determined at a rate of 8.5% from March 1, 2009 through April 29, 2011, liquidated damages in the amount of $2,288.19, legal fees in the amount of $1,275 and costs in the amount of $390.

The summons and complaint were duly served on Nifenecker and he has not answered, nor has he opposed this motion. The Clerk of the Court noted Nifenecker's default on May 10, 2011 and Judge Seybert referred the motion for default on May 13, 2011. The plaintiffs were given until July 6, 2011 to submit additional papers, and they did so on June 20, 2011. The Supplemental Declaration regarding the difference in names was filed on November 22, 2011.

## DISCUSSION

<u>Default Judgment Standards</u>:

Entry of a default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party." *Dae Woo Kim v. City of New York*, 1990 U.S. Dist. LEXIS 7137, at *5 (S.D.N.Y. June 11, 1990) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Here, defendant Nifenecker has failed to answer the Complaint and is therefore a non-responsive party. I recommend that default judgment be entered and turn to the damages to be awarded.

A default constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages. *See Delucia v. RTD Strategies, Inc.* 2009 WL 346972, *2 (E.D.N.Y. Feb. 4, 2009)(citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992)). A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F. Supp. 107, 111 (E.D.N.Y. 1997). But, even after default "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.,* 2007 WL 3124612, *3 (E.D.N.Y. Oct. 23, 2007). And, the movant must prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)(citations omitted). Detailed affidavits and other documentary evidence can provide this basis. *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991).

Here, the plaintiffs have submitted a declaration from Walter Shaw, the Billing and Eligibility Manager of the plaintiff Funds, who supervises and manages the departments that bill contributing employers and calculate the amounts due, recording whether employers have submitted monthly remittance reports and contributions to the Funds. They have also submitted a declaration and two supplemental declarations from their attorney, Jeffrey S. Dubin, along with the relevant documents that support their claims. The defendant has not submitted any

3

opposition. Accordingly, a hearing on the issue of damages is not necessary.

Individual Liability of Eugene Nifenecker:

As noted *supra,* it is somewhat unusual for an individual to be named as the sole defendant in an action pursuant to 29 U.S.C. § 1132 to collect delinquent contributions and related damages. The plaintiffs argue that Nifenecker is individually liable as an ERISA fiduciary, pursuant to Second Circuit precedent. In *LoPresti v. Terwilliger*, the Second Circuit considered whether the signatories to a collective bargaining agreement, who had used Plan assets rather than segregating them, were ERISA fiduciaries. 126 F.3d 34 (1997). The Court noted that the definition of an ERISA fiduciary is functional and is to be broadly construed. 126 F.3d at 40. Section 1002(21)(A) of ERISA defines a fiduciary in several ways, providing, *inter alia*, that a person is a fiduciary with respect to a plan, and thus is subject to fiduciary duties, if he or she "exercises any authority or control respecting management or disposition of [plan] assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A)(i) and (iii). Applying these definitions, the Court found that the defendants were fiduciaries, reversing the finding of the district court, and noting that:

> By focusing on whether the [defendants] were administrators of the Funds, . . . the district court overlooked the fact that an individual also may be an ERISA fiduciary by . . . "exercis[ing] *any* authority *or* control respecting management *or* disposition of [plan] assets." 126 F.3d at 40.

The Court looked to the fact that the defendants were signatories to the company's account, and that one of them signed checks on that account, including payments to the Funds, and had "a role in determining which bills to pay." *Id.* These factors, the court concluded, established that the defendant who signed the checks and made such decisions was "a fiduciary

4

for purposes of imposing personal liability under ERISA." *Id.*(internal citations omitted). The defendant who was authorized to sign checks on the company's behalf but who did not have responsibility for deciding which creditors would be paid, did not, the Court determined, exercise sufficient authority or control over the Plan assets and thus was not an ERISA fiduciary. *Id.* at 40-41.[1]

The Complaint herein makes a claim of breach of fiduciary duty under ERISA, and expressly alleges that Nifenecker was a fiduciary who exercised control over the activities and

---

[1] A number of cases take a somewhat different approach to individual liability involving a collective bargaining agreement, noting that although federal law governs disputes arising under ERISA, New York state law applies in determining whether a collective bargaining agreement imposes personal liability on a signatory to the agreement. *See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip General Constr.,* 2007 WL 3124612, *6 (E.D.N.Y. Oct. 23, 2007)(citing *Mason Tenders Dist. Council Welfare Fund v. Thomsen Constr. Co.,* 301 F.3d 50, 53 (2d Cir. 2002)). Based on its analysis of New York law, the Second Circuit has held that, where liability is based on a signed CBA, there must be "clear and explicit evidence" that an individual intended to be held personally liable for the liability of a corporation when he signed the CBA. *See Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp.,* 2009 WL 5821676, *6 (E.D.N.Y. Oct. 8, 2009)(citing *Thomsen*, 301 F.3d at 53). The court must determine whether there is "overwhelming evidence of the signatory's intention to assume personal liability." *Manhattan Plumbing,* 2009 WL 5821676 at *6 (internal citations omitted). Potentially dispositive factors include "'the length of the contract, the location of the liability provisions(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation.'" *Id.* (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo,* 35 F.3d 29, 35 (2d Cir. 1994)). The analysis in *Thomsen* and *Lollo*, however, appears to focus primarily on claims pursuant to section 301 of the LMRA, and liability here is predicated on more than the signed CBA. Thus, the analysis in *LoPresti* is more applicable. In any event, applying the *Lollo/Thomsen* factors to Nifenecker, some weigh in favor of his liability and others either do not or not enough is known about them. Weighing against liability is the fact that the CBA is a long contract, the liability provisions are not near the signature line and the signatory's name does not appear in the agreement other than on the signature line. The negotiations leading to the contract are unknown. The plaintiffs' allegations about Nifenecker's role in the corporation, that is, that he signed checks on the company's accounts, including checks payable to the Funds, and decided which bills to be paid or not paid and when, supports a finding of liability and reflects the *LoPresti* approach.

operations of Liberty Signs, exercised authority or control respecting management or disposition over assets of the Benefits Funds within the meaning of ERISA, determined whether Liberty Signs made timely contributions to the Funds, whether Liberty Signs used Fund assets to pay other obligation of the company, signed most or all of the company's checks, including checks to the Funds, directed money from one corporate account to another, and determined whether to transfer Fund assets to himself. Complaint, DE[1], ¶¶ 11-18, 25-28. Those allegations have not been challenged or disproved by the defaulting defendant. Thus, the Complaint contains well pleaded allegations that Nifenecker is an ERISA fiduciary who is liable under ERISA for breach of his fiduciary duties under the reasoning of *LoPresti*. *Compare Finkel v. Romanowicz,* 577 F.3d 79, 86-87 (2d Cir. 2009)(finding no fiduciary status where plaintiffs failed to allege that defendant "engaged in or had the authority to engage in, any activities that would make him a fiduciary"), *with Finkel v. Union Elevator Corp.,* 2011 WL 1655573 (E.D.N.Y. May 2, 2011)(reviewing relevant law and finding fiduciary status in light of sufficient allegations in Complaint). I turn now to the damages owing.

Damages for Delinquent Contributions:

The defendant is a party to and bound by the Collective Bargaining Agreement between Liberty and Local Union 137, Sheet Metal Workers' International Union, which sets the rates to be contributed and providing that the contributing employer adopts the Funds' Agreements and Declarations of Trust. *See* Shaw Decl., ¶¶8-1, Ex. A & G. The CBA required Liberty to submit remittance reports and contributions but it failed to do so. *See generally*, Shaw Decl.

29 U.S.C. §1132(g)(2) provides that when a judgment in favor of a plan is entered pursuant to section 1145, the court shall award the plan: (1) unpaid contributions; (2) interest on

6

the unpaid contributions; (3) an amount equal to the greater of the interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not to exceed 20 percent of the amount of unpaid contributions; (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate.

Delinquent Contributions

Here, the plaintiffs have estimated the contributions owed pursuant to formulae set forth in the Trust Agreement, concluding that Nifenecker owes $11,441.67 in estimated unpaid contributions to various funds. *See* Shaw Decl. ¶¶17-29, Exs. A-F. I recommend the award of that amount.

Interest

The plaintiffs originally sought interest in the amount of $1,950.48, calculated at a rate of 8.5% for all of the Funds. But that amount was corrected to $1,938.44 for the pension fund only, waiving the small amount of interest for the other funds. *See* Supp. Decl. of Jeffrey S. Dubin, ¶¶ 4-7. I recommend the lower award.

Liquidated Damages

Pursuant to 502(g)(2)(c) of ERISA, 29 U.S.C.§1132(g)(2)(c) and the Trust Agreement, liquidated damages are to be awarded in an amount equal to the greater of interest on the unpaid contributions or twenty percent of unpaid contributions. Here, the plaintiffs seek liquidated damages in the amount of $2,288.19, which is, presumably, their estimate of twenty percent of the unpaid contributions. But twenty percent of $11,441.67 is $2,288.33, and they should be awarded that amount in liquidated damages.

Attorney's Fees and Costs:

ERISA requires an award of attorney's fees and costs upon a determination that an employee benefit plan is entitled to judgment for unpaid contributions. 29 U.S.C. §1132 (g)(2)(D). When assessing the reasonableness of legal fees, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.,* 575 F.3d 170, 174 (2d Cir. 2009). To calculate the presumptively reasonable fee, the court must first determine a reasonable hourly rate for the legal services performed. *Id.* Reasonable hourly rates in attorney fee awards are determined with reference to a number of factors, including but not limited to those factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).[2] *See Arbor Hill*, 522 F.3d at 186-87, 190. Those factors are to be considered within the context of the relevant legal "community," traditionally defined as "the district where the district court sits." *Arbor Hill,* 522 F.3d at 190 (internal citation omitted).

Here, the plaintiffs seek $1,275 in attorneys fees, based on charges of $250 per hour for 5.1 hours of attorney Jeffrey Dubin's time. I find that rate and the number of hours to be quite reasonable for ERISA work performed in the Eastern District by an attorney of Mr. Dubin's experience and qualifications. Thus, I recommend an award of the amount sought.

---

[2]The *Johnson* factors, as articulated by the court in *Arbor Hill*, are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 522 F.3d at 186, n.3 (citing *Johnson,* 488 F.2d at 717-19).

They also seek costs in the amount of $390, consisting of a court filing fee of $350 and $40 for service of process. *See* Dubin Decl. I recommend that award as well.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Plaintiff's counsel is directed to serve a copy of this Report on the defendants and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
November 30, 2011

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge